SOUTHERN, SCHOOL BUILDINGS, INC., Appellant (Defendant Below),

v.

LOEW ELECTRIC, INC., Appellee (Plaintiff Below).

No. 3–879A241.

Court of Appeals of Indiana, Third District.

July 9, 1980.

Rehearing Denied Aug. 14, 1980.

Martin H. Kinney, Merrillville, for appellant.

Clifford E. Simon, Jr., Shoaff, Keegan, Baird & Simon, Fort Wayne, David C. Jensen, Eichhorn, Eichhorn & Link, Hammond, for appellee.

STATON, Judge.

In 1972 Loew Electric, Inc., an electrical contractor, entered into a written agreement with Southern, School Buildings, Inc., a builder and owner of educational facili-

ties. Under the terms of the contract, Loew Electric agreed to complete all electrical work in the construction of Jay County High School in consideration for the sum of $946,910.00.

Pursuant to the agreement, the electrical work was required to conform to specifications, incorporated into the contract. Included in the contract was a proviso whereby a third party—an architectural firm named K.M. Associates, Inc.—was vested with responsibility to inspect Loew's work and evaluate its conformity with contract specifications. According to the contract, Loew was entitled to interim payments as its work at the construction site progressed; Southern, on the other hand, was entitled to retain ten (10) per cent of the contract price as "final payment" to insure Loew's ultimate compliance with its contractual obligations.

As Loew's work at the construction site proceeded, it received payments from Southern proportionate to the work completed and approved. Ultimately, those payments totaled approximately $850,000.00.

In February of 1976, an architect for K.M. Associates inspected Loew's final work product and certified that it was completed in accordance with contract specifications. Loew Electric then requested that Southern pay the outstanding balance on the contract account, which included the ten per cent retainage and various "extra" costs incurred by Loew not originally included in the contract.

Notwithstanding the certification, Southern refused to pay the balance. This refusal was motivated by Southern's belief that Loew's work did not in fact conform to contract specifications; in turn, Southern claimed its contractual obligation to make final payment was dependent not only on the architect's certification, but also, on its own determination that Loew's work conformed to contract specifications. Southern

also claimed that it was not responsible for "extra" costs incurred by Loew because no authorization for these extra costs had been given by Southern as required under contract.

After Southern refused to pay the outstanding balance, Loew Electric instituted this action to recover the monies it considered due. Prior to trial Loew sought leave to amend its complaint to add a count for punitive damages against Southern, which was denied by the court. The cause was tried to a jury, which found for Loew Electric and awarded it damages in the amount of $112,890.53, plus $23,171.21 in accrued prejudgment interest. The jury also awarded Southern $5,088.00 on its counterclaim, which sought attorney fees and costs incurred by Southern as a result of the suit.

Both parties then filed Motions to Correct Errors. The trial court denied Southern's motion, but granted Loew Electric a new trial solely on the issue of punitive damages.

On appeal, Southern has raised the following issues for our review:

(1) Whether the trial court erred in giving Loew's tendered instructions numbered 1, 3, and 4?

(2) Whether the trial court erred in refusing Southern's tendered instructions numbered 7, 10, 12, and 18?

(3) Whether the jury's verdicts were inconsistent?

(4) Whether the court erred in granting Loew Electric a new trial on the issue of punitive damages?

We affirm in part and reverse in part. We conclude that the trial court committed reversible error when it gave Loew's tendered instruction 1; Southern is granted a new trial on the issue of Loew's claim to the ten per cent retainage and interest thereon.[1] In all other respects, the trial court is affirmed.

1. As explained hereinafter, the trial court's grant of a new trial to Loew on the issue of punitive damages is affirmed. Consequently, both the issue of punitive damages and Loew's

claim to the ten per cent retainage (and prejudgment interest thereon) will be litigated at the new trial.

## I.

## Instructions Given

### A. *Loew's Tendered Instruction 1*

Loew Electric's tendered instruction 1, which was given by the trial court, reads:

"It is a rule of law in Indiana that where a contract provides that work shall be done to the satisfaction, approval, or acceptance of an architect or engineer, he is thereby constituted a sole arbitrator by the parties, who are bound by his decision in the absence of fraud or such gross mistake as to imply bad faith or a failure to exercise honest judgment. His decision is not conclusive to the extent that it cannot be reviewed by a court. It is only prima facie correct and the burden is upon the other party to show fraud or mistake. Accordingly, if you find that the architects, K/M Associates, Inc., did accept the work performed by Loew Electric Inc., and approved payment therefor, Plaintiff is entitled to recover the amounts approved by the architects as of the payment dates set forth in the contract between the parties, unless Defendant proves, by a preponderance of the evidence, fraud on the part of the architects or such gross mistake on the part of the architects as to imply bad faith."

Southern contends that the instruction was improper because it misled the jury regarding the contractual rights and obligations between itself and Loew Electric. Specifically, Southern argues that, contrary to the express language of the instruction, Loew was not "entitled" to final payment simply because the architect certified its work as completed in accordance with contract specifications. Rather, Southern asserts, its own determination that Loew's work conformed to contract specifications was also a condition precedent to Loew's right to final payment. In response, Loew argues that the instruction was an accurate statement of law and properly described the contractual rights and obligations of the parties. We agree with Southern.

It is true that the statement of law incorporated into the instruction accurately reflects Indiana case precedent. It has often been stated that when a contract provides that work is to be "done to the satisfaction, approval, or acceptance of an architect or engineer, he is thereby constituted a sole arbiter by the parties. . . ." *McCoy v. Able et al.* (1892), 131 Ind. 417, 30 N.E. 528, 31 N.E. 453, *quoted in Lake Mich. Water Co. v. U.S. Fidelity, etc. Co.* (1919), 70 Ind. App. 537, 123 N.E. 703, 705, and *James I. Barnes Const. Co. v. Washington Township* (1962), 134 Ind.App. 461, 184 N.E.2d 763, 764.

 Our courts apparently have not heretofore confronted a contract wherein an architect's or engineer's certificate was not made conclusive upon the parties.[2] That the effect of an architect's or engineer's certificate is wholly dependent upon its contractual context is axiomatic. The parties to a contract have the right to define their mutual rights and obligations as they see fit. *Prudential Insurance Co. v. Lancaster* (1966), 139 Ind.App. 292, 219 N.E.2d 607, 609. Were our courts to regard an architect's or engineer's certificate as *per se* conclusive upon the parties, irrespective of the contractual role accorded the certificate by the parties, we would invade the sanctity of the contractual relationship. As explained in Jaeger, *Williston on Contracts* § 789 p. 803 (3rd Ed. 1961):

"The mere fact that an architect's or engineer's certificate is made a condition precedent to the liability of the owner does not establish necessarily the fact

---

2. In *McCoy, Lake Mich. Water Co.,* and *James I. Barnes Const. Co., supra,* the Courts did not reveal the contractual language upon which their respective "sole arbiter" conclusions were founded. We need not join in Loew and Southern's speculation as to the nature of the contractual provisions at issue in those causes. A literal application of the proposition of law upon which those decisions were grounded— without respect for the particular contractual provisions at issue here—would, as explained, *infra,* place this Court in the position of rewriting the contract between Loew and Southern. Absent allegations of illegality or unconscionability, that is not the province of this Court. *Reed et al. v. Lewis* (1881), 74 Ind. 433, 439; *Piskorowski v. Shell Oil Company* (1980), Ind. App., 403 N.E.2d 838.

that the builder has fulfilled his main obligation to build according to the plans and specifications and in a workmanlike manner. The owner may have protected himself doubly: first, by a condition requiring an architect's certificate before payment is due; and second, by the builder's promise or by some other additional condition. In such a case, even though the condition requiring a certificate is fulfilled, a builder will still remain liable for the fulfilment of the second condition or for breach of his promise." (Footnotes omitted.).

Cf., *Mercantile Trust Co. v. Hensley* (1907), 205 U.S. 298, 27 S.Ct. 535, 51 L.Ed. 811 (absent provision to the effect that architect's certificate is conclusive, it is not binding on the parties). *Gerisch v. Herold* (1913), 82 N.J.L. 605, 83 A. 892 (proof of owner's satisfaction as well as architect's certificate required under contract); *Smith v. Goff* (1958), Okl., 325 P.2d 1061 (construction of home in "good and workmanlike manner", as well as to satisfaction of architect, required by contract). Other jurisdictions have consistently held that inasmuch as a "sole arbiter" proviso is in derogation of common law, the intent to so appoint an architect or engineer must be unequivocally expressed. *Mercantile Trust Co. v. Hensley, supra* ("To make such certificate conclusive requires plain language in the contract. It is not to be implied."); *Zimmerman v. Marymoor* (1927), 290 Pa. 299, 138 A. 824, 825 ("As the effect of the architect's certificate is to deprive a party of trial by jury, it must be construed strictly.")

Here, the parties unequivocally indicated in their written contract that K.M. Associates' certificate of approval was *not* to be conclusive upon Southern insofar as its duty to make final payment was concerned. Paragraph two (2) of Southern and Loew's agreement reads:

"2. *CONTRACT PRICE*: The 'OWNER' shall pay to the 'CONTRACTOR' for the performance of this contract, the contract price of NINE HUNDRED FORTY–SIX THOUSAND, NINE HUNDRED TEN and 00/100 ($946,910.00) Dollars. Payments are to be made to the 'CONTRACTOR' in accordance with and subject to the provisions embodied in the documents made a part of this contract and according to the conditions hereinafter set out in this contract, provided partial waivers of liens from 'CONTRACTOR' and all suppliers and subcontractors of 'CONTRACTOR' are delivered to 'OWNER' for each payment requested. Ten (10%) Per Cent of this contract price shall be withheld by the 'OWNER' and shall be paid to the 'CONTRACTOR' sixty-one (61) days after all of the following conditions are fully met:

(a) Completion of all work on the 'punch list';

(b) Delivery to the 'OWNER' of guarantee by 'CONTRACTOR' and assignment by 'CONTRACTOR' to 'OWNER' of guarantees from all subcontractors and/or manufacturers;

(c) Certificate by Architect that all the work is fully completed to their satisfaction;

(d) *The compliance of all the terms of the specifications, including Addenda and Alternates, to the approval of the 'OWNER'*;

(e) The submission to 'OWNER' by 'CONTRACTOR' of written application for final payment with final waivers of liens attached thereto from 'CONTRACTOR' and all suppliers and subcontractors of 'CONTRACTOR';

(f) It is expressly understood that the 'OWNER' may at its sole discretion waive any prerequisite or requirement for final payment set forth in this paragraph or elsewhere in the contract document."

As emphasized, subsection "d" of paragraph 2 entitled Southern to withhold ten per cent of the contract price if it determined that Loew's work did not conform to specifications. Southern's right to retain final payment existed independent of K.M. Associates' certification, for the parties indicated in paragraph 2 that the ten per cent retainage could be withheld until "all of the . . . conditions are fully met."

In the face of this unequivocal language, Loew Electric has based its argument that the contract designated K.M. Associates as sole arbiter for the parties on provisions contained in a document entitled "General Conditions of the Contract for Construction." The "General Conditions" document, a form instrument prepared by the American Institute of Architects, was incorporated into the principal contract instrument by reference. It is not necessary to discuss the provisions relied upon by Loew; [3] the provisions of documents incorporated by reference were expressly made subservient to the terms of the parties' principal written instrument. Paragraph eleven (11) of the parties' principal contractual instrument reads:

---

**3.** Loew specifically points to the following sections of the "General Conditions" document:
"2.2.2 The Architect will be the Owner's representative during construction and until final payment. The Architect will have authority to act on behalf of the Owner to the extent provided in the Contract Documents, unless otherwise modified by written instrument which will be shown to the Contractor. The Architect will advise and consult with the Owner, and all of the Owner's instructions to the Contractor shall be issued through the Architect.
"2.2.4 The Architect will make periodic visits to the site to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. . . .
"2.2.5 Based on such observations and the Contractor's Applications for Payment, the Architect will determine the amounts owing to the Contractor and will issue Certificates for Payment in such amounts, as provided in Paragraph 9.4.
"2.2.6 The Architect will be, in the first instance, the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor. The Architect will, within a reasonable time, render such interpretations as he may deem necessary for the proper execution or progress of the Work.
"2.2.8 All interpretations and decisions of the Architect shall be consistent with the intent of the Contract Documents. In his capacity as interpreter and judge, he will exercise his best efforts to insure faithful performance by both the Owner and the Contractor and will not show partiality to either."
We note, however, that expressly stated within 2.2.10 and 7.10 of the "General Conditions"

---

"11. *COMPONENT PARTS OF THIS CONTRACT.* This contract consists of the following component parts, all of which are as fully a part of this contract as if set out verbatim, or if not attached, as if hereby attached.
"(a) Notice and Instructions to Bidders.
"(b) *General Conditions.*
"(c) All general construction specifications; all mechanical specifications; and all electrical specifications including additions, alterations and addenda thereto.
"(d) Plans and Drawings.
"(e) Performance Bond.
"(f) This Instrument.
"The component parts of the contract as set forth in subparagraphs (a) through

---

document was the parties' stipulation that any disputes between the parties *could* be submitted to arbitration upon the demand of either party.
"2.2.10 Any claim, dispute or other matter that has been referred to the Architect, except those relating to artistic effect as provided in Subparagraph 2.2.9 and except any which have been waived by the making or acceptance of final payment as provided in Subparagraphs 9.7.5 and 9.7.6, shall be subject to arbitration upon the written demand of either party. However, no demand for arbitration of any such claim, dispute or other matter may be made until the earlier of:
* * *
"7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."
Consequently, even within the "General Conditions" document, K.M. Associates was not vested with the "sole arbiter" status which Loew asserts.

(f) are complementary. *If there is any conflict between any of the component parts of the contract and this instrument, the terms, conditions and provisions of this instrument shall control.*" (Emphasis added.).

Consequently, however, the provisions of the "General Conditions" document might be interpreted, the "terms, conditions, and provisions" of the parties' principal contractual instrument were controlling. Paragraph 2 of that instrument, as previously discussed, unequivocally indicates that the certificate of K.M. Associates was not the sole condition precedent to Loew's right to payment.

▮ The trial court thus erred when it instructed the jury that, absent evidence that K.M. Associates' certification of Loew's work was a gross mistake or a product of fraud, Loew was "entitled" to payment. The instruction in effect rewrote the contract to eliminate conditions which the parties had agreed were prerequisites to Loew's right to payment. In addition, the jury was erroneously informed via the instruction that Southern, not the plaintiff Loew, had the burden of proof at trial. In short, the instruction was neither pertinent to the issues nor applicable to the evidence. *Baker v. Masson* (1968), 253 Ind. 348, 242 N.E.2d 513, 515; *State v. Lincoln Memory Gardens, Inc.* (1961), 242 Ind. 206, 177 N.E.2d 655, 659; *Chaney v. Tingley* (1977), Ind.App., 366 N.E.2d 707, 711.

Whether, as here, such error is reversible or harmless in nature is dependent upon whether it appears that the jury's verdict "could" have been predicated upon the improperly given instruction.[4] Ind.Rules of Procedure, Trial Rule 61; *Stanley v. Johnson* (1979), Ind.App., 395 N.E.2d 863, 867; *Cf., Summers v. Weyer* (1967), 141 Ind.App. 176, 226 N.E.2d 904, 907 (reversible error if it appears that jury's verdict "*may* have been based on" erroneous instruction (emphasis original)).

Our evaluation of the influence which the erroneous instruction potentially had on the jury's verdict must diverge into two evidentiary contexts. The damages which the jury awarded Loew sprung from two independent contractual disputes: (1) Southern's refusal to make final payment of the ten per cent retainage, and (2) Southern's refusal to assume responsibility for the "extra" expenses incurred by Loew during the course of its work.

The erroneous directives contained in Loew's instruction 1 embraced the essence of the parties' dispute over the ten per cent retainage: what conditions precedent was Loew required to satisfy before it was entitled to the final ten per cent of the contract price? Notwithstanding the prerequisites outlined in paragraph 2 of the parties' contract, the jury was instructed that Loew was "entitled" to payment if the evidence revealed that K.M. Associates had certified its work.

Documentary evidence of K.M. Associates' certification was presented to the jury by Loew Electric. Loew, to support the propriety of the certification, introduced

---

4. We note in that respect that the trial court also instructed the jury regarding the various contractual prerequisites to Loew's right to final payment detailed in paragraph 2, as heretofore quoted. Although that instruction was proper, the fact that it was given cannot be said to cure the trial court's erroneous instruction. *Deckard v. Adams* (1965), 246 Ind. 123, 203 N.E.2d 303. Our Supreme Court explained in *Deckard*:

> "[T]his court has repeatedly enunciated the rule that the error of a bad instruction is not cured by the giving of correct instructions on the same subject. Such instructions are not to be viewed as a whole, with this court on appeal left to determine which of the contradictory instructions the jury should reasonably have believed. *Gallivan v. Stickler* (1918), 187 Ind. 201, 118 N.E. 679; *Indianap-*

*olis Traction, etc. Co. v. Henby* (1912), 178 Ind. 239, 97 N.E. 313; *Fowler v. Wallace* (1892), 131 Ind. 347, 31 N.E. 53; *Gary Railways, Inc. v. Chumcoff* (1952), 122 Ind.App. 139, 96 N.E.2d 685. See also: *Snow v. Sutton* (1961), 241 Ind. 364, 170 N.E.2d 816.

> "As stated in *Fowler v. Wallace*, supra, 131 Ind. [347] at pp. 355–356, 31 N.E. [53] at p. 55

> "' * * * It is an elementary principle of procedure that the court cannot, by contradictory instructions, leave to the jury the duty of determining which of the two lines of instructions shall be followed, or what rule of law shall control the case. The law must come from the court, and be so declared that the jury can follow it without confusion.'"

246 Ind. at 127–28, 203 N.E.2d at 306.

testimony which indicated that Loew's final work product conformed to specifications. Loew's evidence further indicated that the electrical problems Southern complained of were attributable to either improper and inadequate specifications or warranty defects in installed equipment. Consequently, Loew has argued on appeal that the refusal of Southern to pay the ten per cent retainage was unreasonable in light of the evidence that its work did in fact conform to contract specifications.

The evidence that Loew's final work product was in conformity with contract specifications was disputed. William Passwater, an electrical engineer with K.M. Associates, Inc., testified that an electrical panel in the school building was not installed in accordance with contract specifications. Passwater, who inspected the panel subsequent to his architectural firm's certification of Loew's work, testified that the problem was a "hidden" one which required remedial action. If it had been discovered earlier, he stated, it would have been included among those items required of Loew as prerequisites to certification by K.M. Associates. Lloyd Cline, Chief of Electrical Maintenance for Jay County High School, testified that four of the eight electrical panels located in the building were installed in a manner inconsistent with contract specifications. He blamed improperly installed electrical panels for light outages in the English classrooms of the building. In addition to Passwater's testimony, George Baxter, a licensed professional electrical engineer, testified that the panels were improperly installed and he further testified that the improper installation created a potentially hazardous situation wherein fire might result from overloaded circuits.

Conflicting testimony was also presented with regard to the reason for the propensity of the lights on the football field to go out during games. While Loew attributed the stadium lighting problem to design deficiencies, testimony also indicated that the problem was not a product of faulty design.

When we consider this conflicting evidence, which included extensive testimony couched in technical electrical terms, we are unable to conclude that the trial court's error in giving Loew's instruction 1 was harmless. The instruction erroneously directed the jury that Loew was "entitled" to payment on the basis of K.M. Associates' certification and that Southern had the burden of proving otherwise. To hold that the jury's decision to award Loew the ten per cent retainage (and prejudgment interest thereon) could not have been predicated upon the instruction would defy both common sense and case precedent. *Compare, Harper v. James* (1965), 246 Ind. 31, 203 N.E.2d 531; *Deckard v. Adams* (1965), 246 Ind. 123, 203 N.E.2d 303; *Chaney v. Tingley* (1977), Ind.App., 366 N.E.2d 707; *Summers v. Weyer* (1967), 141 Ind.App. 176, 226 N.E.2d 904. Accordingly, the question of Loew's claim to the ten per cent retainage [5] and prejudgment interest thereon must be relitigated at a new trial.

The new trial granted here will not encompass the issue of Loew's claim for the "extra" expenses incurred by it during the course of its work. We affirm the jury's award of these expenses; we conclude that the jury's verdict relating to "extra" expenses could not have been based on the erroneous instruction.

Our conclusion is based on the fact that the erroneous instruction was limited in scope to the *quality of Loew's work product.* The instruction addressed the "work that shall be done", the "work performed by Loew Electric", and the conformity of that work to contract specifications. The instruction did not embrace the materials or man-hours necessary for Loew to complete performance.

Similarly, the requisition forms certified by K.M. Associates were itemized in form and distinguished between contractual responsibilities discharged by Loew and extra costs incurred by it. Obviously, K.M. Associates' certification of the latter did not

---

5. We ascertain the amount of the ten per cent retainage to be $96,556.50, as is indicated by the final requisition tendered to Southern by Loew. *See* fn. 12, *infra.*

constitute a representation that the extra expenses reflected work completed in accordance with contract specifications. The "extra" costs reflected changes or additions to the contract specifications which K.M. Associates deemed necessary to Loew's effective completion of its contractual responsibilities and were unrelated to the question whether the quality of Loew's work product conformed to contract specifications. Consequently, it cannot be said that the jury's award of the "extra" expenses incurred by Loew could have been based on the erroneous instruction.

### B. *Loew's Tendered Instruction 3*

 Loew Electric's tendered instruction number 3, which was given by the trial court, reads:

"It is the law of the State of Indiana that a construction of a contract that is inequitable and gives an unfair or unreasonable advantage to one of the parties will be avoided. Accordingly, if you find that the Plaintiff did perform the electrical construction work under the Contract in accordance with the plans and specifications, and that said work was approved by the supervising architects, you are instructed that any interpretation of the Contract which permits the Owner to unreasonably or unfairly refuse to approve payment of requisitions 20, 22 and 23, or any part of them, should be avoided."

Southern has not cited any authority to support its position that the instruction was improper; it has consequently waived its right to challenge the propriety of the instruction.[6] Ap. 8.3; *Murphy v. State* (1977), Ind., 369 N.E.2d 411, 413.

### C. *Loew's Tendered Instruction 4*

Loew's tendered instruction 4, which was given by the trial court, reads:

"Paragraph 7.9.1 of the General Conditions provides: 'Any moneys not paid when due to either party under this Contract shall bear interest at the legal rate in force at the place of the Project.' You are instructed that interest should be allowed not only where the amount due is liquidated, but also where the amount, though unliquidated, is capable of ascertainment by mere computation or calculation or by reference to known and established standards of value.

"You are further instructed that, if you find by a preponderance of the evidence, that Plaintiff is entitled to recover from the Defendant for work which Plaintiff did perform, you shall determine the amount of money to which Plaintiff is entitled and the date when the same should have been paid, together with interest thereon at the rate of Eight Percent per annum from said due date."

Southern argues that the instruction was improper because, in two respects, it states incompletely the prerequisites to a recovery of prejudgment interest. Southern specifically asserts that the instruction failed to inform the jury that an award of prejudgment interest was dependent upon proof (1) that the amount due was "determined" prior to trial, and (2) that a particular due date for the monies was established. In support

---

**6.** We note that the instruction was not wholly inappropriate to the issues presented for the jury's consideration. While it is true, as Southern has baldly asserted, that the interpretation of a contract is normally a question of law for the court to decide, the meaning of a contract can be a question of fact if an ambiguity exists within the agreement. *Wilson v. Kauffman* (1973), 156 Ind.App. 307, 296 N.E.2d 432, 437. Here, an ambiguity did exist. According to the parties' principal written instrument, Southern was not responsible for any extra expenses incurred by Loew unless Southern authorized the expenditure. Evidence, however, also indicated that subsequent to the parties' execution of the principal written instrument, Southern

agreed to permit K.M. Associates to exercise sole authority for the authorization of "extra" expenses of less than $1,000.00. The effect of this modification created an ambiguity for the jury to resolve. *Coyner v. Lynde* (1858), 10 Ind. 282, 284; *Tong v. Orr* (1909), 44 Ind.App. 681, 87 N.E. 147, 88 N.E. 308. Therefore, it was necessary for the court to instruct the jury on the principles of contract construction which should guide its deliberations. The instruction properly stated rules of contract interpretation set out in *Komisarow v. Lansky* (1966), 139 Ind.App. 351, 219 N.E.2d 913 and *Western & Southern Life Ins. Co. v. Vale* (1938), 213 Ind. 601, 12 N.E.2d 350.

of its argument, Southern relies on *Portage Ind. Sch. Const. Corp. v. A.V. Stackhouse Co.* (1972), 153 Ind.App. 366, 287 N.E.2d 564.

In *Portage Ind. Sch. Const. Corp. v. A.V. Stackhouse Co., supra*, this Court defined the requirements which must be satisfied in order for a party to recover prejudgment interest:

"It has been held in Indiana that the question is not whether the damages are liquidated but whether they are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation."

153 Ind.App. at 373, 287 N.E.2d at 569, *quoting Rauser v. LTV Electro Systems, Inc.,* 437 F.2d 800 (7th Cir. 1971). These concepts were reiterated in *Indiana Tel. Corp. v. Indiana Bell Tel. Co.* (1976), Ind. App., 358 N.E.2d 218, 229:

"Where the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation, prejudgment interest computed from the time the principal amount was demanded or due is allowable at the permissible statutory rate, in the absence of an express contractual provision specifying the interest rate."

Implicit in these statements, as Southern has argued, is the proposition that a particular date must be established as the time when the principal sum became due; otherwise, the period of time during which compensable prejudgment interest accrued could not be reduced to exact terms.

■■■ Here, the trial court instructed the jury that "any monies not paid *when due*" were subject to interest assessments. We are unable to perceive—nor does Southern explain—in what manner this language

was inadequate to inform the jury that evidence of a particular accrual date for the principal sums was necessary to award prejudgment interest. Furthermore, the jury was presented with documentary evidence of the dates when the principal amounts of "extra" expenses [7] in dispute became due. Contractual provisions regarding due dates for payment were introduced into evidence, together with the dated requisition forms which triggered Southern's obligations to pay within the applicable time frames. The instruction was not inadequate with respect to the prerequisite of an accrual date.

Nor was the instruction erroneous insofar as its language regarding the amount of the principal sums at issue. Southern's contention that the law requires the principal sums to be "determined" does not accurately reflect existing law. The test is not whether the parties have mutually fixed the amount in dispute; rather, the question is whether the principal amount is ascertainable by mere computation. *Indiana Tel. Corp. v. Indiana Bell Tel. Co., supra; Portage Ind. Sch. Const. Corp. v. A.V. Stackhouse Co., supra.* The instruction was properly framed in terms of the susceptibility of the principal sums to ascertainment. We find no error in Instruction 4.[8]

## II.

### Instructions Refused

A. *Southern's Tendered Instruction 7*

The trial court refused to give Southern's tendered instruction number 7, which reads:

"I charge you that where two parties with full knowledge of all facts make valid commitments they are bound thereby and unless there be some valid legal

---

7. Inasmuch as we have reversed the jury's award of the ten per cent retainage and prejudgment interest thereon, we are concerned here only with the amount of the prejudgment interest relative to the award of "extra" expenses.

8. We note that Southern, within that portion of its brief devoted to the alleged impropriety of Loew's instruction 4, has in one sentence argued that there was no evidence to establish the amount of the principal sums due or the

due dates. That assertion, which is made without supporting legal authority, is meritless. As summarized in the text, *supra*, requisition forms and payment requests were submitted into evidence, together with relevant contractual provisions regarding the ascertainment of due dates and calculation of interest on those amounts. In addition, the testimony of Arthur Loew explained the calculations by which the claimed interest was determined.

prohibition the law should require that such commitments be honored by the parties making them."

Southern contends that the trial court's failure to give the instruction permitted the jury to ignore those contractual obligations established by the parties which it considered "somehow unfair". As a corollary proposition, Southern maintains that the jury was not informed that its primary duty was to effectuate the intentions of the parties as established in their contract.

 Both aspects of Southern's allegation of error are meritless. It is well settled that a trial court may properly refuse a tendered instruction if the proposition of law stated in the tendered instruction is sufficiently covered in other instructions given by the court. *Chaney v. Tingley* (1977), Ind.App., 366 N.E.2d 707, 711. Here, the essence of Southern's tendered instruction was adequately explained in Southern's requested instructions 1 and 8, which were given by the court. Those instructions read:

*Southern's Instruction No. 1:*

"I charge you that individual parties have the right to make terms of agreements as they deem fit and proper, and regardless of how stringent those terms may be they will be given that effect which naturally flows from the use of the words contained in the contract."

*Southern's Instruction No. 8:*

"I charge you that the primary rule of construction of contracts is to ascertain and give effect to the parties intentions."

Had the trial court given Southern's instruction 7 in addition to 1 and 8, it would have unduly emphasized through repetition a proposition of law already adequately explained. The trial court did not err in refusing Southern's tendered instruction 7.

B. *Southern's Tendered Instruction 10*

Southern's tendered instruction 10, which was refused by the trial court, reads:

"I charge you that even though the architect certified that the work was fully complete, the Defendants are allowed to put on evidence going to show that in fact the work was not complete as of the giving of the certificate. Despite the architect having given the certificate, you may still find that the evidence supports the conclusion that the Plaintiff has failed to fully complete their work as called for by the contract documents."

Southern contends that this instruction should have been given in place of Loew's instruction number 1, which was heretofore discussed. Southern maintains that its tendered instruction 10, unlike Loew's instruction 1, correctly states the law with regard to the effect of the architect's certificate on the parties' contractual obligations.

 We agree with Southern in the latter respect.[9] Nonetheless, the refusal of the trial court to give Southern's tendered instruction 10 was not error. The jury was instructed with regard to the various contractual conditions precedent to Loew's right to payment by virtue of Southern's instruction number 6. Instruction 6 constituted a verbatim recitation of the contractual conditions detailed in paragraph 2 of the parties' principal contract document, as heretofore quoted; among those conditions recited to the jury was the parties' stipulation that Southern could retain ten per cent of the contract price if it determined that Loew's work did not conform to contract specifications. The trial court properly refused to give Southern's instruction 8, for the contractual responsibilities of Loew were adequately explained in Southern's instruction 6. *Chaney v. Tingley, supra.*

C. *Southern's Tendered Instructions 12 and 18*

 Pursuant to the express language of TR. 51(D), Southern is not entitled to

9. As discussed heretofore, Loew's instruction 1 informed the jury that, contrary to the agreement of the parties, the certificate of K.M. Associates was binding on Southern's absence of proof that it was motivated by fraud or gross mistake. Southern's tendered instruction number 6 accurately reflects the parties' agreement regarding the effect of the architectural firm's certification.

predicate error upon the trial court's refusal to give its tendered instructions 12 and 18. TR. 51(D) reads:

"(D) Limit upon requested instructions. Each party shall be entitled to tender no more than ten [10] requested instructions to be given to the jury; however, the court in its discretion for good cause shown may fix a greater number. Each tendered instruction shall be confined to one [1] relevant legal principle. No party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by this rule or the number fixed by the court order, whichever is greater."

Here, the trial court, consistent with the provisions of TR. 51(D), considered only Southern's tendered instructions numbered 1 through 10.[10] The court did not err in refusing to consider tendered instructions 11 through 18, and Southern cannot predicate a claim of error on that refusal. *Cochrane v. Lovett* (1975), 166 Ind.App. 684, 337 N.E.2d 565, 571.

### III.

### Inconsistent Verdicts

■ Southern contends that the verdicts of the jury on Loew's claim and Southern's counterclaim were inconsistent and warrant reversal by this Court. Southern has not, however, supported its argument with any legal authority. The failure of Southern to cite authority to support its contention constitutes a waiver of its right to have this Court consider its contention. Ind.Rules of Procedure, Appellate Rule 8.3; *Williams v. State* (1973), 260 Ind. 543, 297 N.E.2d 805, 807; *State of Fla. ex rel. O'Malley v. Department of Ins.* (1973), 155 Ind.App. 168, 291 N.E.2d 907, 914.

### IV.

### Punitive Damages

As its final contention, Southern maintains that the trial court erred when it

granted Loew Electric a new trial on the issue of Loew's claim for punitive damages. Southern specifically attacks the trial court's action on three bases.

First, Southern argues that a trial on the issue of punitive damages is unwarranted because the evidence would not justify an award for punitive damages. As Loew has pointed out in its brief, Southern has misconstrued the posture in which the propriety of the trial court's remedial action must be considered by this Court.

Prior to trial, Loew Electric had sought leave to amend its complaint so as to add a count for punitive damages against Southern. After conducting a hearing on the question whether punitive damages would properly be in issue in the action, the trial court denied Loew Electric's motion for leave to amend its complaint. The cause proceeded to trial; the issue of punitive damages was not litigated by the parties. Not until after the trial was completed— when the trial court was confronted with Loew's Motion to Correct Errors—did the court conclude that it had erred in denying Loew's request to amend its complaint.

In reversing its prior determination, the Court stated:

"7. In reaching said conclusion, the Court finds that said Additional Paragraph does contain sufficient allegations to state a cause of action for punitive damages, that punitive damages are recoverable in contract actions in Indiana, under proper circumstances, that the evidence which the Motion and Memorandum offered to prove would tend to support a claim for punitive damages, and that the interests of justice dictate that Plaintiff should have been and should be permitted to present the issue of punitive damages, and the evidence, if any, in support thereof to the trier of fact for determination. Even before Plaintiff filed its Motion to Correct Errors, the evidence elicited during the trial of this

10. The record does not indicate that Southern requested the trial court to entertain instructions beyond the limit imposed by TR. 51(D),

nor does Southern argue on appeal that "good cause" was shown for such an exception.

cause made it apparent to the Court that it had erred in refusing Plaintiff's punitive damage application."

As the court's statement indicates, its consideration was focused on the allegations of fact contained in the additional count, together with Indiana law regarding the propriety of punitive damages in contract actions.

It is in that context which we must assess the trial court's action. We will examine the allegations contained in the count which Loew sought to add to its complaint to determine whether, under Indiana law, a claim for punitive damages is stated. We will not, as Southern requests, indulge in an examination of the evidence presented (on a matter not in issue) at trial to determine whether Loew is in fact entitled to punitive damages. The issue of Loew's claim for punitive damages is ultimately a question of fact for the jury to decide. *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 362 N.E.2d 845, 848.

In *Hibschman Pontiac, Inc. v. Batchelor, supra,* our Supreme Court defined those elements necessary to the recovery of punitive damages in contract actions:

"Punitive damages may be awarded in addition to compensatory damages 'whenever the elements of fraud, malice, gross negligence or oppression *mingle* in the controversy.' (emphasis supplied.) *Vernon Fire & Casualty Ins. Co. v. Sharp, supra,* Ind., [264 Ind. 599] 349 N.E.2d 173, 180, quoting *Taber v. Hutson* (1854), 5 Ind. 322.

"Further, where a separate tort accompanies the breach or the elements of tort mingle with the breach, it must appear that the public interest will be served by the deterrent effect of the punitive damages. *Vernon Fire & Casualty Ins. Co. v. Sharp, supra.*"

362 N.E.2d at 847–48.

In the count which Loew sought to add to its complaint, it made the following allegations regarding the monies which it considered due from Southern:

"7. That said withholding has been intentionally and maliciously done by the Defendant to force an unwarranted and unfounded compromise by the Plaintiff and to destroy Plaintiff's business and business reputation.

"8. That as a result of Defendant's arbitrary and willful refusal to pay the sums owing to Plaintiff, Plaintiff has been unable to pay its business indebtednesses and has been compelled to, and has, in fact, sold its business assets and ceased its business operation of more than twenty years.

"9. That as a result of Defendants deliberate, willful and malicious conduct, Plaintiff has been damaged in the sum of Two Hundred Fifty Thousand Dollars ($250,000.00)."

These allegations are sufficient to state a claim for punitive damages. A malicious and intentional withholding of money due for the purpose of injuring the financial stability of a business enterprise would, if proven, constitute conduct injurious to the public interest for which punitive damages would be justified. The trial court did not err in ruling that the allegations contained in the count warranted submission of the issue to the jury.

Southern has also argued that the trial court did not have authority under TR. 59(E) to grant a new trial for the purpose of adjudicating Loew's claim for punitive damages. Southern has not offered any authority for its position, which stands in direct contradiction to one of the essential purposes of TR. 59: to provide the parties and trial court with a final opportunity to correct error without resort to appellate review. If a trial court determines that prejudicial error has occurred during the course of the proceedings, a wide range of remedies are available under TR. 59(E), including a new trial. Southern's bald assertion that the trial court lacked authority to grant a new trial is without merit.

Southern has also argued that even if the trial court did have authority to grant a new trial, it erred in its determination that the scope of the second trial would be limited to the question of Loew's claim for puni-

tive damages. In support of its position, Southern relies on *State v. Tabler* (1978), Ind.App., 381 N.E.2d 502.

In *Tabler*, the trial court granted a Motion to Correct Errors based on the claim that the compensatory damages awarded plaintiff were inadequate. The trial court granted plaintiffs a new trial solely on the issue of damages. On appeal from that decision, this Court noted that a determination that compensatory damages are inadequate does not *per se* warrant a new trial on that issue.

Rather, as Presiding Judge Garrard noted in his written opinion for this Court:

"Indiana Rules of Procedure, Trial Rule 59(E)(5) has been interpreted in *Borowski v. Rupert* (1972), 152 Ind.App. 9, 281 N.E.2d 502 to permit the trial court to grant a new trial limited solely to the issue of damages or, alternatively, additur. However, the court warned that a new trial on a single issue is proper only when:

'. . . it clearly appears that the issue to be retried is so distinct and separable from the others that a trial on it alone may be had without injustice.' 281 N.E.2d 502, 506.

"This constraint is particularly appropriate when inadequate damages are involved since they may be conclusive proof that the jury has compromised its verdict. *F & B Livery Co. v. Indianapolis Traction & Terminal Co.* (1919), 71 Ind.App. 203, 124 N.E.2d 493."

381 N.E.2d at 505. Southern points out that the evidence regarding its liability was disputed and that the evidentiary nature of the punitive damages claim vis-a-vis the questions of liability and compensatory damages are intertwined. Under the principles enunciated in *Tabler*, Southern argues that these factors render inappropriate a new trial on the sole issue of punitive damages.

We disagree. As Loew Electric has argued, we are confronted here with circumstances wholly unlike those present in *Tabler*. We do not confront here a challenge to the inadequacy of *compensatory* damages, with its attendant implications that the jury's award was the product of compromise on the question of liability. Rather, the new trial granted here concerns an issue which the jury was not permitted to consider due to a pre-trial ruling by the court. The court's decision to grant a new trial reflects only on its previous refusal to permit Loew to amend its complaint; it in no way called into question the jury's determinations on the questions of liability and compensatory damages.

Similarly, the issue of punitive damages involves legal concepts and factual proof distinct from those relevant to the questions of liability and compensatory damages. A claim for punitive damages in a contract action is dependent upon proof that, in addition to the breach of contract, the breaching party committed an independent tort or was guilty of fraud, malice, gross negligence, or oppressive conduct. *Hibschman Pontiac, Inc. v. Batchelor, supra.*

Southern has not shown this Court the manner in which the trial court's decision to submit the punitive damages issue to the jury in a new trial will prejudice it. While the need to re-litigate that issue at a new trial is regrettable, the trial court did not err in granting a new trial limited to the issue of punitive damages. *Cf., Cansler v. State* (1972), 258 Ind. 450, 281 N.E.2d 881, 883 (trial court has power to re-open a case for the purpose of one witness' testimony).

Of course, in view of our determination that the trial court committed reversible error in giving Loew's tendered instruction 1, Loew's count for punitive damages will be joined with the relitigation of Loew's claim to the ten per cent retainage and prejudgment interest thereon.[11]

---

11. At the new trial, any evidence tending to prove the elements necessary to a claim for punitive damages, whether linked to the dispute over the ten per cent retainage or the disagreement over Southern's responsibility for the "extra" costs incurred by Loew, will be admissible.

The jury's award of the ten per cent retainage and prejudgment interest thereon is reversed.[12] Southern is granted a new trial with respect to Loew's claim to those monies. In all other respects, the judgment of the trial court is affirmed. The cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

GARRARD, P. J., and HOFFMAN, J., concur.

12. We ascertain the ten per cent retainage amount to be $96,556.50, as per the "final" requisition statement tendered to Southern by Loew. That portion of the award of interest which is subject to reversal and re-litigation should be calculated by the trial court accordingly.