Buford K. PRICE, Jr., and Sherrie Price, Plaintiffs,

v.

AMOCO OIL COMPANY, Defendant and Third-Party Plaintiff,

v.

Charles Dudley FAIR, d/b/a Fair's Standard Service Station, Third-Party Defendant.

No. IP 77–154–C.

United States District Court, S. D. Indiana, Indianapolis Division.

July 7, 1981.

Supplemental Order and Final Judgment Sept. 9, 1981.

Jon D. Krahulik of Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for plaintiffs.

R. Stanley Lawton of Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant and third-party plaintiff.

Paul T. Brenton, Danville, Ind., for third-party defendant.

## ORDER

NOLAND, District Judge.

This cause is before the Court upon cross motions for summary judgment with respect to the third party complaint.

Whereupon the Court, having heard oral arguments on said motions, having considered the memoranda and affidavits filed in support of and opposition thereto, and being duly advised in the premises, hereby makes the following rulings:

1. The motion for summary judgment of third party defendant Fair is hereby DENIED.

2. The motion for summary judgment of third party plaintiff Amoco will be GRANTED; provided that the third party plaintiff can establish at a subsequent hearing that its settlement with plaintiffs Buford K. Price and Sherrie Price was fair and reasonable. At said hearing, Amoco need not prove its legal liability to the Prices, but only show its potential liability in negligence. *See Missouri Pacific Railroad Co. v. International Paper Co.*, 618 F.2d 492, 497 (8th Cir. 1980); *Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039, 1042 (6th Cir. 1969).

3. That the Court withholds ruling on Amoco's request for costs and attorney's fees pending the outcome of the aforesaid hearing.

IT IS SO ORDERED.

## MEMORANDUM ENTRY

On February 24, 1976, Buford K. Price, an employee at Fair's Standard Service Station, was severely injured when he attempted to repair a loose exhaust system on a 1970 Pontiac Catalina. As Price worked beneath the vehicle, which had been elevated atop a hydraulic lift, the Catalina rolled off the lift and fell onto him. The extensive injuries suffered by Price rendered him a paraplegic and resulted in the filing of the instant lawsuit.

In their complaint, Sherrie and Buford Price sought damages against Amoco Oil Company, the owner and lessor of the sta-

tion leased and operated by Charles Dudley Fair. Amoco then proceeded to file a third party complaint against Fair, based upon an indemnification clause contained within the lease agreement between Fair and Amoco. Fair denied any liability under the lease and counterclaimed for monies paid to Price by Fair's insurer, Statesman Insurance Company, under a workmen's compensation policy.

In June of 1978, a settlement was entered into between the Prices and Amoco. This agreement provided that in exchange for a dismissal of all claims against Amoco, the Prices would receive $400,000. Prior to the presentation of said agreement to the Court, Amoco, by counsel, notified counsel for Fair of the proposed settlement and tendered the defense of the action to Fair in exchange for a hold harmless agreement. (See letter of July 19, 1978, from R. Stanley Lawton to Paul T. Brenton.) Fair rejected the offer and a formal entry of settlement between the Prices and Amoco was later filed on July 31, 1978. (See letter of July 28, 1978, from Paul T. Brenton to R. Stanley Lawton.)

Relying on the lease agreement previously mentioned, third party plaintiff Amoco (plaintiff) now seeks reimbursement from third party defendant Fair (defendant) for the total amount of the Price settlement, together with interest, costs, and attorney's fees. Cross motions for summary judgment having been filed on the third party complaint, the Court will now address the issues as set forth in defendant Fair's supporting memorandum.

ISSUE ONE—Was there a real and voluntary meeting of the minds between Amoco and Fair regarding an indemnification clause?

Defendant's initial argument that he should not be held liable to Amoco under the lease agreement is based upon a claim of unconscionability. Defendant points to the case of *Weaver v. American Oil Co.*, 276 N.E.2d 144 (Ind.1971), as support for his position. In *Weaver*, an indemnity provision identical to the one at bar was at issue. Much like defendant Fair, Weaver, a filling

station operator, argued that he was presented with a lease agreement on a "take it or leave it basis." Weaver maintained that he neither read the lease nor understood it. Because of the oil company's superior bargaining position, Weaver contended that he was "forced" to sign an unconscionable contract.

In striking the indemnity provision as invalid, the Indiana Supreme Court emphasized Weaver's background and lack of education:

> Weaver had left high school after one and a half years and spent his time, prior to leasing the service station, working at various skilled and unskilled labor oriented jobs. He was not one who should be expected to know the law or understand the meaning of technical terms, ... Weaver had never read the lease prior to signing and [ ] the clauses in the lease were never explained to him in a manner from which he could grasp their legal significance.

*Id.* at 145–56. The Court further observed:

> The party seeking to enforce such a contract has the burden of showing that the provisions were explained to the other party and *came to his knowledge* and there was in fact *a real and voluntary meeting of the minds and not merely an objective meeting.* (Original emphasis.)

*Id.* at 148. However, in reaching its conclusion, the Court also stated:

> We do not mean to say or infer that parties may not make contracts exculpating one of his negligence and providing for indemnification, but it must be done *knowingly* and *willingly* as in insurance contracts made for that very purpose. (Original emphasis.)

*Id.* at 148.

In the instant case, an examination of Fair's educational background reveals a record remarkably dissimilar to that of Weaver. Fair was a college graduate who had taken courses in business law. Upon graduation, Fair spent seventeen years with Amoco as a marketing representative. During this period, Fair was responsible for

negotiating leases on behalf of Amoco, reviewing the leases with Amoco dealers, and answering or obtaining answers to any questions the dealers might have as to the lease provisions. Unlike Weaver, Fair had numerous opportunities to read and become familiar with the provisions of the lease.

Moreover, a review of the circumstances surrounding Fair's signing of the lease belies any contention that it was presented on a "take it or leave it basis." Not only did Fair object to a provision of the lease concerning a set rate for monthly rental payments, but Fair negotiated a different rental amount based on gallons of gasoline pumped per month. This fact alone negates any claim by Fair that he was the victim of an "adhesion contract."

■ However, the most significant factor supporting a conclusion that Fair was familiar with the provisions of the lease is evidenced by Fair's obtaining insurance coverage from Statesman to relieve his indemnity obligation. The fact that Fair may not have read the lease agreement in its entirety at the moment of signing is of little import. In contrast to Weaver, a station operator who "could not be expected to know the law or understand the meaning of technical terms," Fair's actions reflect those of a man who understood the lease agreement and was capable of grasping its legal significance. The Court necessarily concludes, therefore, that defendant Fair knowingly and willingly contracted with plaintiff Amoco.

ISSUE TWO—Was the settlement between Price and Amoco voluntary?

■ "As a general rule, a person making payment is a mere volunteer not entitled to [indemnification] if in making payment he has no right or interest of his own to protect and acts without obligation, moral or legal, and without being requested to do so by a person liable on the obligation.[1] *Ohio Casualty Group of Insurance Companies v. Royal-Globe Insurance Companies,* 413 N.E.2d 678, 680 (Ind.App.1980). Applying this standard to the case at hand, there can be no question that Amoco's settlement with the Prices was not a voluntary one.

From the moment Buford K. Price filed his complaint, defendant and third party plaintiff Amoco was faced with the possibility of a legal obligation. This fact became even clearer when discovery revealed at least one specific instance of Amoco's failure to repair the broken lift a week prior to the accident. (See deposition testimony of Nolan Huckleberry.) Thus, it cannot be argued that Amoco had no right or interest of its own to protect.

Amoco sought to protect its interest through means of a settlement accepted by this Court on July 31, 1978. However, the settlement was not effected without notice to Fair and an opportunity to assume the defense of the action. That Amoco chose not to proceed to judgment provided no basis for Fair's assertion that Amoco's settlement constituted a voluntary payment.[2] As the Court of Appeals stated in *Allied Mutual Casualty Corp. v. General Motors Corp.,* 279 F.2d 455, 460 n. 15 (10th Cir. 1960);

> The fact that the payment by the plaintiff here to the injured person was a voluntary one in the sense that the claim was not reduced to a judgment does not defeat the right of indemnification. If it appears that the party was legally liable and could have been compelled to satisfy the claim, that is sufficient.

What remains for consideration is the question of whether Amoco's settlement with the Prices was fair and reasonable. As noted in the Court's Order accompany-

---

1. Although *Ohio Casualty* dealt with a subrogation claim, "the rationale which denies subrogation to a volunteer is the same with respect to indemnification." *Vernon Fire & Casualty Ins. Co. v. Graham,* 166 Ind.App. 509, 336 N.E.2d 829, 831 n. 1 (1975).

2. Fair also contends that Amoco's settlement without his consent is violative of *Ind.Code* § 22–3–2–13. However, the Court concludes that the consent requirement is not applicable in the present situation since the release did not affect the claim for workmen's compensation benefits paid by Statesman, which remains pending before the Court.

ing this Memorandum, a hearing on this issue will be held at a future date. At that time, deposition testimony may be introduced with respect to the potential liability of Amoco and any defenses which it might have asserted. It will also be necessary for the Court to examine the settlement amount in light of the injuries sustained by Price.

ISSUE THREE—Did the original complaint by Price present a claim in strict liability only, and if so, is Amoco entitled to indemnification solely on that basis?

Defendant Fair's third and final contention in support of his motion for summary judgment consists of a two-step argument. First, Fair submits that the original complaint by Price against Amoco did not support both a claim in negligence and strict liability. Fair argues that only a claim for strict liability was stated. Second, because Fair contends that the lease agreement indemnifies Amoco for negligence only, Fair concludes that Amoco is not entitled to recover on its third party complaint.

■ The Court will first address Fair's position that Price's complaint sounds only in strict liability. The relevant portion of said complaint states as follows:

> 5. At the time such lease was executed the lift in such service station was defective in such a way as to make it unreasonably dangerous.
>
> 6. From the time such lease was executed the condition of the lift was not changed in any respect.

Although the preceding allegations are not explicit in their intent, the Court notes that under Rule 8(a)(2) of the Federal Rules of Civil Procedure, only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. Rule 8(e)(2) further states: "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses." Accordingly, the Court concludes that rhetorical paragraph six could support a finding by a jury that Amoco negligently failed to repair the lift.

Rhetorical paragraph five, though "sounding" in strict liability, similarly could support a claim regarding a defective condition of the lift resulting from negligence. Moreover, it is clear that Indiana law recognizes such a claim. *J. I. Case Co. v. Sandefur*, 245 Ind. 213, 197 N.E.2d 519 (1964); *Fruehauf Trailer Division v. Thornton*, 366 N.E.2d 21 (Ind.App.1977).

Further support for a finding that the Price complaint entails a claim for negligence is found in the third party pleadings. In Amoco's third party complaint, paragraph three alleges and says:

> That plaintiff (Price) complains of the defendant and third party plaintiff that defendant Amoco Oil Company was negligent and further permitted said automobile lift to be used in a defective condition, unreasonably dangerous to users and consumers.

Fair's response to this allegation by way of his answer stated: "That the allegations contained in rhetorical paragraph three are admitted." Fair is now without standing to pose an objection that the original complaint of Price would only support a recovery in strict liability.

Finally, the Court would note the specifications of defect and negligence filed on behalf of Price on June 15, 1978. Included in said specifications is a claim by Price that the "Amoco Oil Company, through its employees, negligently failed to repair said lift prior to the accident." It therefore cannot be said that defendant Fair was without notice of the negligence claim by Price. Suffice it to say that Fair's objection following the settlement between Price and Amoco is both belated and without merit.

Notwithstanding the Court's ruling that a claim for negligence has been stated by Price's complaint, the Court does not decline to decide the issue of whether Amoco could seek indemnification from Fair on the sole basis of strict liability. That portion of the lease agreement providing for indemnification states as follows:

> Lessor, its agents and employees shall not be liable for any loss, damage, injuries, or

other casualty of whatsoever kind or by whomsoever caused, to the person or property of anyone (including lessee) on or off the premises, arising out of or resulting from lessee's use, possession or operation thereof, or from defects in the premises whether apparent or hidden, or from the installation, existence, use, maintenance, condition, repair, alteration, removal, or replacement of any equipment thereon, whether due in whole or in part to negligent acts, or omissions of lessor, its agents or employees; and lessee for himself, his heirs, executors, administrators, successors and assigns, hereby agrees to indemnify and hold lessor, its agents and employees, harmless from and against all claims, demands, liabilities, suits, or actions (including all reasonable expenses and attorneys' fees incurred by or imposed on lessor in connection therewith) for such loss, damage, injury or other casualty. Lessee also agrees to pay all reasonable expenses and attorneys' fees incurred by lessor in the event that lessee shall default under the provisions of this paragraph.

Although this provision of the lease has been construed as exculpating the lessor from its liability in negligence and compelling the lessee to indemnify the lessor for damages incurred as a result of its negligence, *Weaver, supra*; there has been no judicial determination that said clause provides indemnity for the lessor's strict liability. Nevertheless, Amoco argues that the express language of the clause requiring indemnification for all claims arising "from the installation, existence, use, maintenance, condition, repair, alteration, removal, or replacement of any equipment thereon . . ." includes any and all claims brought in a negligence or strict liability action. In response, Fair contends that the indemnity provision at issue is not sufficiently specific to justify indemnification for Amoco's strict liability.[3]

In construing contracts of indemnity, the rule has long been recognized that a contract of indemnity is to be strictly construed and is not to be held to provide such indemnification unless so expressed in clear and unequivocal terms. *Auto Owners Mutual Insurance Co. v. Northern Indiana Public Service Ice. Co. and John Dehner, Inc.*, 414 F.2d 192 (7th Cir. 1968); *Norkus v. General Motors Corp.*, 218 F.Supp. 398 (S.D. Ind.1963). This rule was expanded even further in the case of *Indiana State Highway Commission v. Thomas*, 169 Ind.App. 13, 346 N.E.2d 252 (Ind.App.1976), wherein it was held that *explicit reference* to the indemnitee's negligence is a pre-requisite to his indemnification. The Court in *Thomas* went on to note:

> [T]he obligation to insure another party against the cost of the other's own negligence is so extraordinary and harsh . . . , with the potential liabilities assumed . . . awesome, that a promissor would not lightly accept such a burden knowingly and willingly. (Citations omitted.)

346 N.E.2d at 263.

Similarly, this Court is of the opinion that where Amoco seeks indemnification for its own strict liability, an explicit reference to strict liability must be contained within the proposed indemnification agreement. The current agreement between Fair and Amoco is requesting Fair to assume the awesome burden of any act for which Amoco might be held strictly liable without a knowing or willing acceptance on the part of Fair. Such a burden requires at the very minimum the same protection as that afforded one who contractually assumes to act as an indemnitor for another's negligence. This is especially true since "strict product liability is not a form of ordinary negligence; and policy wise, the tort of strict liability has been held to be a more serious tort than the tort of ordinary negligence." *Kossifos v. Louden Machinery Co.*,

---

**3.** Fair also contends that indemnification for strict liability is against public policy and that the phrase "whether due in whole or in part to negligent acts or omissions of lessor . . ." restricts the indemnification obligation to that situation; however, the Court does not reach these additional contentions since the Court finds defendant's specificity claim dispositive of the strict liability issue.

22 Ill.App.3d 587, 317 N.E.2d 749, 753 (Ill. App.1974).

█ Requiring an indemnitee to specifically identify those wrongs for which he seeks indemnification, whether it be negligence or strict liability, can only further Indiana's judicial policy that contracts for indemnification be "knowingly and willingly made." *Vernon Fire & Casualty Ins. Co. v. Graham, supra* 336 N.E.2d at 831. Clearly, the acceptance by the Court of a less stringent requirement would be contrary to both the spirit and the intent of *Weaver v. American Oil, supra.* For this reason, the Court determines that under section five of the lease agreement at issue, third party plaintiff Amoco is not entitled to indemnification for strict liability.

## CONCLUSION

In summary, the Court concludes that defendant Fair knowingly and willingly entered into a lease agreement with Amoco whereby Amoco became indemnified for its own negligence. Subsequent to the date of Buford Price's accident, Amoco negotiated a settlement with Price for $400,000 in exchange for a dismissal of all claims against Amoco, including negligence. Pursuant to the indemnity provision previously discussed, Amoco may now proceed against defendant Fair on its third party complaint.

Accordingly, defendant Fair's motion for summary judgment is hereby DENIED and ruling on plaintiff Amoco's motion for summary judgment will be held in abeyance until such time as a hearing is conducted on the issue of the fairness and reasonableness of Amoco's settlement with the Prices.

## SUPPLEMENTAL ORDER AND FINAL JUDGMENT

This cause is before the Court pursuant to Paragraph 2 of the Court's Order of July 7, 1981, instructing the parties to submit additional evidence on the Motion For Summary Judgment. This Order supplements the Order of July 7, 1981, and constitutes final judgment herein.

This matter came on for hearing; the parties appeared, submitted depositions and oral testimony; and the Court being duly advised in the premises now makes the following rulings and enters the following judgments:

1. The Motion For Summary Judgment of the Third-Party Plaintiff, Amoco Oil Company, is GRANTED.

2. IT IS HEREBY ORDERED, ADJUDGED and DECREED that Amoco Oil Company shall recover of and from Charles Dudley Fair, the Third-Party Defendant, the sum of $526,256.80, together with its costs.

3. IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Third-Party Counterclaim filed by Charles Dudley Fair against Amoco Oil Company filed on April 5, 1978, is DISMISSED, and it is ORDERED, ADJUDGED and DECREED that Charles Dudley Fair take nothing on his Third-Party Counterclaim and that Amoco Oil Company recover its costs.

IT IS SO ORDERED.

## MEMORANDUM ENTRY

On July 7, 1981, by its Order, the Court instructed the parties to submit additional affidavits or testimony in respect to certain issues. The hearing on those issues was held on August 13, 1981, and August 17, 1981, and Amoco Oil Company introduced evidence that the amount of the settlement with Price and his wife was fair and reasonable. Charles Dudley Fair introduced no evidence to the contrary. There is no genuine issue as to this material fact. In addition, the Court notes the size of the settlement and the extent of the injuries to the original plaintiff, Price, and now finds that the reasonableness of the amount paid in settlement is not subject to dispute.

Amoco Oil Company introduced evidence to show its potential liability in negligence. This was directed to three subordinate issues: (a) The negligence of Amoco; (b) the contributory negligence of Price, and (c) the assumption of risk by Price.

On the issue of negligence by Amoco Oil Company, it is clear from the evidence that Amoco had the duty to maintain the lift in question; that Amoco had been informed that the lift was broken and in need of repairs; that the repair and maintenance personnel of Amoco had personally seen the condition of the lift, had recognized it as dangerous, and had nevertheless failed to make repairs. Charles Dudley Fair did not introduce any evidence to show that Amoco Oil Company was not negligent and the allegations in his counterclaim filed on April 5, 1978, allege that Amoco Oil Company was negligent. Amoco Oil Company admitted its negligence. Where facts are alleged and admitted by the parties and where supporting evidence confirms the accuracy of the facts so alleged and admitted, there is no genuine issue of fact for the Court to consider. Therefore, as to Amoco's negligence, it is clear that there is exposure and potential liability for its negligence, absent proof of appropriate defenses in the form of contributory negligence or assumption of risk.

On the issue of the contributory negligence of Price, Fair relied upon the admitted facts that Price knew of the poor maintenance of the lift and its faulty condition and nevertheless attempted to utilize it in his work. Fair also relied upon the admitted fact that Price was the individual who had manually attempted to put the flaps in a safe position even though Price knew they would not work automatically on account of the faulty maintenance by Amoco.

Amoco Oil Company submitted proof that Price, the original plaintiff, had knowledge of an expert's report from Gage-Babcock & Associates, Inc. In that report the experts set forth that under some circumstances the flaps could be pushed into the up position without being actually locked, and further, the fact that they were not locked "would not be readily apparent to someone working around the car." (Page 2 of the Report.) Price testified to facts to support an inference, that he "thought" the flaps were locked in place when he pushed the flaps up. There was also evidence that Price was injured in an effort to save his brother from being crushed by the falling automobile. In light of these circumstances an experienced personal injury attorney testified at the hearing that he believed the jury would not find that the plaintiff was guilty of contributory negligence or assumption of risk and therefore that Amoco had definite exposure and potential liability.

 In Indiana knowledge and appreciation of peril are essential elements of both contributory negligence and of assumption of risk. *Rouch v. Bisig*, 147 Ind.App. 142, 258 N.E.2d 883. Since Amoco would have had the burden of proof on the plaintiff's defenses of contributory negligence and assumption of risk, a directed verdict could not have been granted unless the evidence would have compelled the inference that there was contributory negligence and/or assumption of risk. In *Rouch v. Bisig* cited above, the plaintiff testified that he did not consider his actions to be perilous, and this standing alone was held enough to avoid a directed verdict. In view of all the facts in this case, a trial court could not have properly directed a verdict against Price if the case had been tried on its merits. The consequence is that there is no genuine issue of fact as to whether there was a potential liability on behalf of Amoco. Further, the facts conclusively show beyond any dispute that potential liability existed.

The evidence heretofore noted supplies the elements adverted to by the Court in the order of July 7, 1981. Although the Order of July 7, 1981 did not contemplate any further submissions by the parties as to the mechanics of the settlement with Price by Amoco, the attorneys for Fair requested the Court to reconsider this point, and the Court permitted additional evidence to be submitted.

The undisputed facts are that the indemnitor, Fair, had immediate knowledge of the accident. He was at all times aware of the indemnity agreement, and he was made a third-party defendant in an effort by Amoco to enforce the indemnity. Fair consistently, up to the entry of the Order on July 7, 1981, continued to deny the validity of the indemnity agreement.

■ The law is clear that an indemnitor who denies liability on an indemnity contract thereby confers on the indemnitee the right to exercise reasonable judgment in settling the case without further consultation with the indemnitor. *Sun Oil Co. v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 (1978); *Luton Mining Co. v. Louisville N.R. Co.*, 276 Ky. 321, 123 S.W.2d 1055 at 1060; and *St. Louis Dressed Beef & Provision Company v. Maryland Casualty Company*, 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712.

■ At no time did Fair offer to take over and defend the case. On the contrary, Fair continued to deny liability. Under these circumstances Amoco was entitled to settle the case for a reasonable amount if it chose to do so.

Clause 5 of the lease between the parties provides as follows:

"5. Lessor, its agents and employees shall not be liable for any loss, damage, injuries, or other casualty of whatsoever kind or by whomsoever caused, to the person or property of anyone (including Lessee) on or off the premises, arising out of or resulting from Lessee's use, possession or operation thereof, or from defects in the premises whether apparent or hidden, or from the installation, existence, use, maintenance, condition, repair, alteration, removal, or replacement of any equipment thereon, whether due in whole or in part to negligent acts or omissions of Lessor, its agents or employees; and Lessee for himself, his heirs, executors, administrators, successors and assigns, hereby agrees to indemnify and hold Lessor, its agents and employees harmless from and against all claims, demands, liabilities, suits or actions (including all reasonable expenses and attorneys' fees incurred by or imposed on Lessor in connection therewith) for such loss, damage, injury or other casualty. Lessee also agrees to pay all reasonable expenses and attorneys' fees incurred by Lessor, in the event that Lessee shall default under the provisions of this paragraph."

■ All the necessary conditions to make this lease provision applicable to this litigation have been shown to exist by uncontrovertible facts. The provisions in the indemnity agreement provide that the indemnitee may be indemnified for attorneys' fees. The evidence was undisputed that Amoco has incurred reasonable attorneys' fees in excess of $26,750 in defending the original action and prosecuting the indemnity agreement. Fair did not dispute the reasonableness of these fees.

■ In Indiana, pre-judgment interest is allowed on amounts which are due and which are specific or liquidated in amount or which are subject to calculation. *Southern School Buildings v. Loew Electric, Inc.*, 407 N.E.2d 240; *Keesling v. Frazier*, 119 Ind. 185, 21 N.E. 552 (an indemnity case). The Federal courts apply such state rules in diversity cases involving indemnity agreements. *Prickett v. Hawkeye-Security Insurance Company*, 282 F.2d 294 (1960).

■ On July 31, 1978 Amoco paid the sum of $400,000.00 to the original plaintiff Price and to his wife. Statutory interest at 8% applied to the settlement results in an interest obligation as of August 31, 1981, in the amount of $98,717.77. Therefore, the total amount due to Amoco Oil Company is $400,000.00, plus $98,717.77 interest, plus $26,750.00 in attorneys' fees for a total sum of $525,467.77. Interest also accrues at the rate of $87.67 per day from September 1, 1981, until the time of the entry of the judgment herein.

The defendant Fair filed a counterclaim claiming entitlement to reimbursement for the workmen's compensation benefits which were paid to Price under the Indiana Workmen's Compensation law. Amoco defended this claim on the basis that the negligence of Fair would preclude this recovery and in addition contended that whatever amount was paid to reimburse Fair for the workmen's compensation benefits would be subject to repayment under the indemnity agreement. It is not necessary for the Court to consider the problem of whether or not Fair is barred by his own negligence because the circuitous nature of Fair's claim against Amoco and Amoco's claim against

Fair means that this is entirely a matter of offsetting claims and under those circumstances the cross-claim should be and is DISMISSED.