Anna WILSON, Plaintiff,

v.

MONTGOMERY WARD & CO., INC., Defendant.

Civ. No. F 84–112.

United States District Court, N.D. Indiana, Fort Wayne Division.

June 13, 1985.

Paul O. Sauerteig, Snow & Sauerteig, Mark Paul Smith, Krueckeberg & Smith, Fort Wayne, Ind., for plaintiff.

James P. Fenton and Bert J. Dahm, Barrett, Barrett & McNagy, Fort Wayne, Ind., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

WILLIAM C. LEE, District Judge.

This matter is before the court for a decision on the merits following a bench trial. This case deals with the breach of an alleged oral contract and a violation of certain Indiana wage statutes, I.C. 22-2-5-1, *et seq*. This court, having examined and considered the entire record and having determined the credibility of the witnesses, after viewing their demeanor and considering their interests, and being duly advised, hereby enters the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

The plaintiff Anna Wilson ("Wilson") is a citizen and resident of Florida, although she was a citizen of Indiana at the time she filed this action. Wilson was employed by the defendant ("Wards"), an Illinois corporation, for approximately twenty-six years, from 1957 to April, 1983. In September, 1979, Wilson became the Operations Manager of the Wards store at the Northcrest Shopping Center in Fort Wayne, Indiana (the "Fort Wayne North" store). The Operations Manager is considered the "second in command" in the managerial structure of a Wards store, subordinate only to the Store Manager.

On January 20, 1983, Wards announced that it would be closing four stores, including the Fort Wayne North store. Approximately four days later, the Store Manager for the Fort Wayne North store quit, effectively leaving Wilson in charge of the management of the store.

On February 11, 1983, Wards held a meeting at its Merrillville, Indiana store. Present at the meeting were the Store and Operations Managers for the other three stores being closed, as well as Wilson, who alone represented the Fort Wayne North store management. The purpose of the meeting was to explain the many procedures for closing down a store. These procedures were outlined in a manual given to each store representative.

At the Merrillville meeting, Gerry Van Booven, then the Assistant District Manager for Wards' Chicago District, spoke to the store representatives about personnel policy during the closing process. At the time of the Merrillville meeting, there was in effect a severance policy for Wards management employees which calculated a manager's severance pay as one week's pay for each full year of service up to a maximum of thirteen week's pay. Wards desired to keep its management personnel on the job through the store closings. As an incentive to induce the Store and Operations Managers at the meeting to remain in their positions until the stores were closed, Van Booven promised that if the managers stayed on and assisted in the closing of the stores, the managers would receive "severance pay," i.e., an amount of additional compensation calculated in the same manner as severance pay. Albert Thomas Lawrence, the Operations Manager at the Lafayette, Indiana Wards store, asked Van Booven at the meeting, with Wilson in attendance, whether Van Booven meant that this offer for "severance pay" was such that even if the managers were offered another position in the company and refused to take it, those managers would still receive this additional pay. Van Booven replied affirmatively. Lawrence asked Van Booven the same question after the meeting to make sure that he understood the incentive outlined by Van Booven. In Wilson's presence, Van Booven reiterated his earlier response.

As both first and second in command, Wilson assumed several additional duties and responsibilities in the store closing process. The closing process itself required additional work to insure security over the store's assets, mark down prices and advertise close-out sales, pack and ship merchandise to other Wards stores, and to wind down the store's operations in general. In addition, Wilson played an active role in assisting the store personnel to cope with the closing, including counseling employees, sponsoring a workshop and buying materials at her own expense to assist employees in finding other employment, and calculating severance pay.

On April 13, 1983, the Fort Wayne North store closed. At that time, Bob Baker, the Area District Manager, offered Wilson a position as Customer Service Manager at Ward's store in Skokie, Illinois. Wilson refused the position, and Baker then informed Wilson that she would receive no severance pay because she had been offered another position in the company and had refused to take it. However, Pat Niedermeyer, the Personnel Supervisor at the Fort Wayne North store, and Betty Berry, the Sales Manager at the store, were both asked whether they would want to transfer to another store, turned down the opportunity, and yet received full severance pay. In the case of Betty Berry, Bob Baker told her that Wards had a position available, but she told him she was not interested in transferring to another store.

The parties stipulated at trial that the amount of money due under the severance pay formula for Wilson is Six Thousand Nine Hundred Fifty Dollars ($6,950.00).

## CONCLUSIONS OF LAW

At the close of the plaintiff's evidence, Wards moved for an involuntary dismissal under Federal Rule of Civil Procedure 41(b). The motion was renewed at the close of all the evidence. The motions were taken under advisement, and the court begins by ruling on this motion.

A. *Motion for Involuntary Dismissal*

Rule 41(b) allows a defendant, at the close of the plaintiff's evidence, to "move for a dismissal on the ground that upon the facts and the law the plaintiff has shown

no right to relief." Wards here attacked Wilson's Wage Statute claim under I.C. 22–2–5–1, *et seq.* by arguing that the statute does not apply because it is intended only to require semi-monthly payment of wages. Wards attacks the breach of contract claim by arguing that no contract was formed because (1) Wilson did not give additional consideration, and (2) the statute of frauds bars the contract claim because the written severance policy should control the payment of severance pay.

### Indiana Wage Statute

Plaintiff sues under I.C. 22–2–5–1. That statute provides that

> Every person, firm, corporation, or association ... whatsoever doing business in this state shall pay each employee thereof at least semi-monthly or bi-weekly, if requested, the amount due each employee....

Failure to pay employees in this manner activates the penalty provisions of I.C. 22–2–5–2, which allow an employee to recover his unpaid wages plus a penalty of up to double the amount of unpaid wages, as well as attorney fees and costs.

■ I.C. 22–2–5–1, *et seq.* is a penal statute which, being in derogation of the common law, must be strictly construed. *Palmer v. Stockberger,* 135 Ind.App. 263, 193 N.E.2d 384, 387 (1963). A close examination of the language of the statute makes clear that it is concerned with the time of payment of wages. Its thrust is to create a statutory requirement that wages be paid semi-monthly or bi-weekly if so requested by the employee. This limited scope becomes more evident when one considers the remainder of the statute, which sets out when an employer need pay wages due after the employee terminates his employment. Thus, the statute under which Wilson sues is one designed to insure the regularity and frequency of wage payments.

■ The court concludes that Wilson's claim under the statute for the unpaid amounts promised at the Merrillville meeting fails for at least three reasons. The first is that the amount promised was not "wages" within the meaning of I.C. 22–2–5–1. Wilson has argued repeatedly that the amount promised is a wage because it falls within the broad definition of "wages" set out in I.C. 22–2–9–1, which defines the term as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece or commission basis, or in any other method of calculating such amount." However, I.C. 22–2–9–1 does not purport to define the term for all Indiana wage statutes; in fact, it is part of an Act dealing with wage claims that was passed in 1939, while the Act which created I.C. 22–2–5–1 was passed in 1933. Wilson's counsel mistakenly believes that these two statutes are somehow related simply because they appear together in the statute book. In fact, I.C. 22–2–9–1 specifically limits the definitions to the 1939 Act.

Rather, the "wages" contemplated by I.C. 22–2–5–1 are something akin to the wages paid on a regular, periodic basis for regular work done by the employee—the paycheck which compensates for the work done in the previous two weeks. Here, Wilson seeks something far different. The promise made by Van Booven was for an amount above and beyond the regular paychecks Wilson received; it was a kind of bonus offered as an incentive to stay on until the store closed. It was measured in an unconventional way—based on years of service—which had no relation to the time worked (thirteen weeks' pay for nine weeks of work). It is more appropriate to view the promise of the Merrillville meeting as a promise to pay a "bonus"—something extra—in return for staying on and closing the stores. The court in *Die & Mold, Inc. v. Western,* 448 N.E.2d 44, 47–48 (Ind.App. 1983), a case repeatedly cited by Wilson, found that a bonus is not "regular compensation." The court therefore concludes that Wilson's Wage Statute claim must fail because wages are not involved here.

The second rationale for rejecting the claim lies in the fact that, even if the promised payment is a wage under I.C. 22–2–5–1

or the expansive definition proffered by Wilson, it does not mean that the Wage Statute applies. Accepting for the moment Wilson's definition of wages as "any compensation for services rendered," it is clear that not all forms of compensation fall under I.C. 22–2–5–1. There are certainly many forms of compensation which, by their very nature, are not payable in semi-monthly or bi-weekly payments. Health or retirement benefits are part of the "compensation for services rendered," yet it makes no sense to say that failure to pay such compensation on a semi-monthly or bi-weekly basis gives rise to a cause of action under I.C. 22–2–5–1. The time of payment contemplated by both employer and employee is some time other than the regular payday at regular intervals. Such is the case here. Both Wards and Wilson contemplated that payment would be after the Fort Wayne North store closed, a time some three months in the future. It was a lump sum payment conditioned upon working through the store closing. It is not the type of wage contemplated by I.C. 22–2–5–1, so that Wilson's claim falls outside it.

Finally, even if the promised payment is a wage falling under the ambit of I.C. 22–2–5–1, Wilson's claim fails because there was no evidence that Wilson requested payment in semi-monthly or bi-weekly payout or that any request was made prior to the time this dispute arose. The court in *Palmer v. Stockberger*, 193 N.E.2d at 388, construing an earlier version of I.C. 22–2–5–1, stated:

> statutes fixing the time for payment of wages require strict compliance for a request or demand for payment of wages and that such request or demand must be directly related to the contract of employment and must be made prior to or concurrent with the period of employment as to the matter of the time for payment of wages and not after a wage dispute has arisen.

Wilson made no demand for payment until this dispute arose; subsequently, she fails to satisfy the provisions of I.C. 22–2–5–1, and her claim must fail. The court will therefore grant the Rule 41(b) motion as to Wilson's Wage Statute claim.

### Breach of Contract

■ Wards attacks the breach of contract claim by arguing that no valid contract was formed. The premise of the argument is that Wilson intended to work at Wards during the closing down period, so that her staying on and assisting in the closing of the store was nothing more than what she would have done anyway. This, Wards concludes, constitutes a failure of consideration on Wilson's part, and thus the oral contract formed at the Merrillville meeting is void.

The record, however, is replete with testimony of how much new and added responsibility Wilson assumed in agreeing to close the store. The Store Manager had left, and thus agreeing to stay on and close the store was, from Wilson's perspective, agreeing to do the work of two people. The manual on store closing procedures created many new tasks for both the Store Manager and Operations Manager. These new, added responsibilities were set out at the Merrillville meeting, accompanied by the promise that if the managers stayed on and assisted in the closing, they would receive additional pay equal in amount to severance pay. Wilson's performance of those added responsibilities constitutes more than sufficient consideration to support the oral contract. Wards' Rule 41(b) motion on this ground must therefore be denied.

■ The second ground for dismissing the contract claim was referred to as the "statute of frauds." However, the statute of frauds is not implicated here at all.[1] In

---

1. It is textbook law that the statute of frauds is designed to insure that certain types of contracts be written in order to be enforceable. The contracts covered by the statute—contracts of marriage, contracts of more than a year, contracts concerning land, contracts of executors or administrators, contracts for the sale of goods in excess of five hundred dollars, and contracts of suretyship—are not implicated here at all. The whole issue of the statute of frauds

fact, in framing this argument, counsel for Wards made clear that the real basis for this argument is the belief that Wilson is seeking severance pay, which should be governed by the written severance policy in effect at the time of the Fort Wayne North store closing. In effect, Wards argues that the written severance policy should override any oral representations about severance pay.

Wards' argument misconceives the nature of Wilson's claim. This is *not* an action to recover severance pay. Rather, it is an action to recover a contractually promised amount of money which is to be computed in the same manner as severance pay. The distinction is crucial. Wilson claims that Wards promised her an amount of money as an incentive to stay on and help close the Fort Wayne North store. Van Booven's promise at the Merrillville meeting constituted a contract offer above and beyond the provisions of Wilson's employment contract, and Wilson accepted the offer by performing her half of the bargain. What has confused both sides is that the amount promised by Van Booven was "severance pay," and that both Wilson and Thomas Lawrence testified about "getting severance pay."

█ The problem is purely semantical. Wilson argued, and the court has found as a matter of fact, that Wards wanted to keep its management people in place through the store closings. Wards therefore decided to offer an incentive, in the form of additional compensation, to induce managers to stay on until the stores closed. This incentive had to be something other than severance pay under the severance policy, because that policy was extant at the time of the Merrillville meeting, so that a mere offer of severance pay under the policy would not have been much of an incentive. Rather, Wards offered something more, and the fact that Van Booven promised payment even if a manager was offered another position in the company and refused it (which is in direct conflict with the severance policy) establishes that the additional compensation promised was something other than pay under the severance policy. The court concludes that Van Booven's promise to pay "severance pay" was a promise to pay an amount that would be computed in the same manner as severance pay. The written severance policy is therefore irrelevant to this action except to the extent that it details a method of computation.[2] Wards' Rule 41(b) motion based on the written severance policy must therefore be denied.

### B. *Decision on the Merits*

The court finds that it has jurisdiction over this cause by virtue of 28 U.S.C. § 1332, on the basis of diversity of citizenship.

█ This is a diversity action over an oral contract which is governed by Indiana

---

appears to have been interjected here when plaintiff argued in her trial brief that the oral contract was enforceable because plaintiff had fully performed her half of the bargain and "equity will regard the case as being removed from the operation of the statute [of frauds] and will enforce the contract." Plaintiff's Trial Brief, p. 1. From that irrelevant reference, the parties have been chasing this red herring throughout the trial.

**2.** Even if the written severance policy was somehow involved in this case beyond the method of calculation provisions, the fact that the policy was written would not bar Wilson's claim. Under Indiana law, a written contract may be modified by a subsequent oral contract, provided the new contract is supported by consideration. *Terry v. International Dairy Queen, Inc.*, 554 F.Supp. 1088, 1094 (N.D.Ind.1983); *Myers v.*

*Maris*, 164 Ind.App. 34, 326 N.E.2d 577 (1975). Here, Van Booven's promise of compensation at the Merrillville meeting would be a modification of the severance policy, and Wilson's performance of all store closing responsibilities was more than adequate consideration. Thus, the court could find a valid modification to the written severance policy, and Wilson could collect her "severance pay."

Furthermore, Wards did not consistently follow its own policy. The testimony of Pat Niedermeyer and Betty Berry established that both were offered other positions with the company, refused them, and were nevertheless paid severance pay. In light of these events, the argument that the severance policy precludes Wilson from recovering severance pay because she was offered the Skokie position and refused it loses much of its validity.

law. An express contract may be oral or written, *Pence v. Beckman*, 11 Ind.App. 263, 39 N.E. 169, 170 (1894). A contract, whether oral or written, requires offer, acceptance, and consideration. *Economy Leasing Co., Ltd. v. Wood*, 427 N.E.2d 483, 487 (Ind.App.1981).

■ All essential elements are present in this case. At the Merrillville meeting, Van Booven promised that Wards would pay an amount equal to severance pay to all managers present at the meeting if they assisted in closing the stores. Wilson accepted this offer by staying on through the closing of the Fort Wayne North store and performing the duties of both Store Manager and Operating Manager. That performance of managerial duties in both roles constituted more than sufficient consideration on Wilson's part to support the oral contract. The court therefore concludes that an oral contract was formed between Wilson and Wards (through its representative, Van Booven) to pay Wilson an amount equal to severance pay if she remained on through the closing of the Fort Wayne North store. Wilson completely performed her obligations under the contract, and therefore Wards' failure to pay the promised amount constituted a breach of the oral contract.

■ The parties have stipulated that the amount due under the severance pay formula adopted by the oral contract is six thousand nine hundred fifty dollars ($6,950.00). This amount constitutes the compensatory damages due Wilson. In addition, Indiana law recognizes that amounts which are due and which are specific, liquidated in amount, or subject to calculation allow for the assessment of prejudgment interest. *Price v. Amoco Oil Co.*, 524 F.Supp. 364, 372 (S.D.Ind.1981); *Courtesy Enterprises, Inc. v. Richards Laboratories*, 457 N.E.2d 572, 580 (Ind.App.1983); *Abex Corp. v. Vehling*, 443 N.E.2d 1248, 1260 (Ind.App.1983). The rationale behind this rule is that the plaintiff has lost the use of the money during the period of time needed to vindicate her rights; prejudgment interest therefore serves as additional

damages which achieve full compensation of the plaintiff. *See Argonaut Ins. Co. v. Town of Cloverdale, Ind.*, 699 F.2d 417, 421 (7th Cir.1983); *Indiana Ins. Co. v. Sentry Ins. Co.*, 437 N.E.2d 1381 (Ind.App. 1982).

■ Title 28, United States Code, § 1961, provides for an award of interest on a money judgment whenever the law of the state in which the court sits permits such an award. Although § 1961 explicitly refers only to post-judgment interest, the Seventh Circuit has held that this statutory reference is not intended to affect a plaintiff's entitlement to prejudgment interest under state law. *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 607 (7th Cir. 1985). *See also In re Air Crash Disaster Near Chicago, Illinois*, 480 F.Supp. 1280, 1282 (N.D.Ill.1979), *aff'd*, 644 F.2d 633 (7th Cir.1981). Prejudgment interest pursuant to Indiana law is allowable on judgments in diversity cases. *Simmons*, at 607; *Price v. Amoco Oil Co.*, 524 F.Supp. at 372.

■ Prejudgment interest is computed from the time the principal amount was demanded or due. *Abex Corp. v. Vehling*, 443 N.E.2d at 1260; *Indiana Tel. Corp. v. Indiana Bell Tel. Co.*, 171 Ind.App. 616, 358 N.E.2d 218, 219, 229 (1976). The rate of prejudgment interest is set by statute, *see Matter of Estate of Kingseed*, 413 N.E.2d 917, 935 (Ind.App.1981); I.C. 24–4.-6–1–102 allows for a rate of eight percent (8%).

Here, the amount due on the contract was specific—one week's pay for each year of service up to thirteen weeks. Given Wilson's twenty-six years with the company, she was clearly entitled to thirteen weeks pay, or $6,950.00. Therefore, Wilson is entitled to eight percent interest on $6,950.00 from April 14, 1983, the date the Fort Wayne North store closed, Wilson's performance under the oral contract was complete, and the amount promised by Wards became due.

Wilson's request for punitive damages has not been seriously advanced by the plaintiff since the filing of the first com-

plaint. The evidence in this action showed no egregious actions by Wards; this appears to be a dispute arising out of the mistaken belief that Wards' severance policy applied here. To the extent that Wilson's request for punitive damages is still present in this case, the court will not award any punitive damages.

CONCLUSION

It is therefore CONSIDERED, ORDERED and ADJUDGED that the plaintiff, Anna Wilson, recover of and from the defendant, Montgomery Ward & Co., Inc., damages in the amount of $6,950.00, plus prejudgment interest dating from April 14, 1983. Plaintiff's claim under the Indiana Wage Statute, I.C. 22–2–5–1, is hereby DISMISSED on defendant's motion. This Memorandum Opinion contains the court's Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure. *See Rucker v. Higher Educational Aids Board,* 669 F.2d 1179, 1183–84 (7th Cir.1982).