John D. PHENICIE, Plaintiff,

v.

BOSSERT INDUSTRIAL SUPPLY, INC., and W.W. Grainger, Inc., Defendants.

No. 1:95–CV–375.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 1996.

John O. Feighner, Haller and Colvin, Fort Wayne, IN, mediator.

John C. Theisen, Holly A. Brady, Gallucci, Hopkins and Theisen, P.C., Fort Wayne, IN, for plaintiff.

Ariane Schallwig Johnson, Charles B. Baldwin, Hugh E. Reynolds, Jr., Lisa D. Tobin, Locke, Reynolds, Boyd and Weisell, Indianapolis, IN, Henry F. Galatz, Skokie, IL, for defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on a Motion for Summary Judgment filed by defendants Bossert Industrial Supply, Inc. ("Bossert") and W.W. Grainger, Inc. ("Grainger") on July 30, 1996. Plaintiff John D. Phenicie ("Plaintiff" or "Phenicie") filed a Response to Defendants' Motion for Summary Judgment on August 16, 1996, and defendants filed a reply on August 30, 1996. For the reasons set forth below, defendants' Motion for Summary Judgment is GRANTED.

## STATEMENT OF FACTS

John Phenicie was employed in 1985 by a company called Vonnegut Corp. In 1989, Grainger purchased Vonnegut and so Phenicie became an employee of Grainger. He was employed as a branch manager of two branch offices, one in Fort Wayne, Indiana, and one in Lima, Ohio. In 1990, Grainger created a wholly owned subsidiary named Bossert Industrial Supply, Inc. and the office at which Phenicie worked was made part of the Bossert subsidiary. Phenicie continued to work as a branch manager for Bossert until February 1, 1995, when he voluntarily terminated his employment with the company.

Phenicie, as a branch manager, was eligible to participate in a Branch Managers' Bonus Plan ("Bonus Plan" or "Plan") established by the company. The Plan provided that a branch manager could earn a bonus if his branch office reached certain income goals. The 1993 Bonus Plan provided that "[t]en percent of every dollar earned above this target amount will be added to your bonus, with no ceiling." Complaint, Exh. A. For example, under the 1993 Plan, Phenicie had a base bonus amount of $8,000.00 and an income goal of $567,900.00. *Id.* If his income exceeded the goal by $32,100.00 (that is, if his total income was $600,000.00), $3,210.00 would be added to his base bonus amount, yielding a total bonus for the year of $11,210.00. *Id.*

Phenicie claims that he and the other branch managers were informed by Bossert's president, Robert Gariano, at a meeting held on or about April 4, 1994, that the same terms and conditions in the 1993 Bonus Plan would apply to the fiscal 1994 Plan. Phenicie also claims that he was informed on or about November 2, 1994 by Grainger regional manager Paul Shaney and Grainger district sales manager Jim Musbach that he would receive his 1994 bonus.[1] Annual bonuses earned under the Plan were generally paid in March or April of the year immediately following the year in which the bonus was earned. However, as of May 17, 1995, Phenicie had not yet received his 1994 bonus, which he calculated at $50,100.00.[2] On that date, he sent a letter to Bossert personnel director Don Grau inquiring as to why he had not yet

---

**1.** The issue of whether or not anyone at Bossert or Grainger told Phenicie that the terms of the 1994 Bonus Plan would be the same as the terms of the 1993 Plan is hotly contested. However, it is not relevant to defendants' Motion for Summary Judgment and will be addressed in a separate Order dealing with the plaintiff's Motion for Summary Judgment.

**2.** Phencie claims that he exceeded his 1994 income goal by $421,000.00 and so was entitled to have $42,100.00 added to his base bonus of $8,000.00.

received his bonus check. By way of letter dated July 5, 1995, Grau informed Phenicie that "the system of awarding bonuses at Bossert is totally at management's discretion and is not subject to any mandated 'Vested Rights' plan or program.... I am also sure that you are aware of the fact that when Bossert does give bonuses, it is only to those individuals who are actively employed with the company and contributing to its overall success at the time the funds are distributed." Complaint, Exh. E.

As a result of defendants' refusal to pay him a bonus for fiscal year 1994, Phenicie filed suit claiming that defendants had violated the Indiana wage statute, I.C. § 22–2–5–1 et seq. He seeks to recover his bonus, along with liquidated damages and attorneys' fees. Defendants maintain that this claim must be dismissed since the bonus Phenicie seeks does not constitute a "wage" under that statute, and that Phenicie failed to satisfy the provisions of that statute. Whether or not the statute applies in this case is the sole issue addressed in defendants' motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Matter of Wildman,* 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High Sch. Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

## DISCUSSION

█ The Indiana wage statute states, in relevant part, as follows:

(a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee.

. . .

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment.

I.C. § 22–2–5–1(a) & (b). Section 2 of the statute contains a penalty provision which states, also in relevant part:

Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due. . . .

I.C. § 22–2–5–2.

Defendants argue that the type of bonus Phenicie alleges he is owed does not constitute wages and is therefore not covered by the statute. In support of their position, defendants rely primarily on a previous decision by this court in *Wilson v. Montgomery Ward & Co., Inc.,* 610 F.Supp. 1035 (N.D.Ind.1985), and on the cases of *Pyle v. National Wine & Spirits Corporation,* 637 N.E.2d 1298 (Ind.App.1994) and *Jeurissen v. Amisub, Inc.,* 554 N.E.2d 12 (Ind.App.1990) *trans. denied.* The court agrees that these cases are controlling.

In *Wilson,* the plaintiff was employed by Montgomery Ward & Co. as the operations manager of one of defendant's department stores. The company announced that it was closing several of its stores, including the one at which Wilson worked. Wilson's supervisor, the store manager, quit after receiving the news. The company promised store managers and operations managers that they would receive severance pay if they agreed to remain with the company to assist in closing the stores, and Wilson agreed to do just that. Once her store was closed, a company official offered Wilson a job in another city, which she refused. The company then refused to pay Wilson the nearly $7,000.00 in severance pay she was owed. Wilson sued under § 22–2–5–1, claiming that the severance payment was wages under the statute. This court rejected Wilson's argument, holding that "the 'wages' contemplated by I.C. 22–2–5–1 are something more akin to the wages paid on a regular, periodic basis for regular work done by the employee—the paycheck which compensates for the work done in the previous two weeks." *Wilson,* 610 F.Supp. at 1038. This court then cited the case of *Die & Mold, Inc. v. Western,* 448 N.E.2d 44, 47–48 (Ind.App.1983), a case also cited by the defendants in the present case, which held that a bonus was not "regular compensation." Additionally, the situation in the present case is similar to *Wilson* in yet another respect. In *Wilson* this court reasoned that "[t]here are certainly many forms of compensation which, by their very nature, are not payable in semi-monthly or bi-weekly payments." Health or retirement benefits are part of the "compensation for services rendered," yet it makes no sense to say that failure to pay such compensation on a semi-monthly or bi-weekly basis gives rise to a cause of action under I.C. § 22–2–5–1. The time of payment contemplated by both employer and employee is some time other than the regular payday at regular intervals." *Id.* at 1039. Likewise in this case, the bonus payment allegedly due Phenicie could not possibly be paid in the semi-monthly or bi-weekly intervals mandated by the statute, since it could not even be computed until the end of the defendants' fiscal year. This fact supports the defendants' argument, and this court's holding, that the bonus money at issue here is not "wages" as that term is contemplated by § 22–2–5–1.

As stated above, defendants also cite the *Pyle* and *Jeurissen* cases, both of which hold that bonuses given to employees based on the overall performance of the employer, and which were not tied directly to the hours worked by the employee or the specific work

done by the employee, could not be considered wages. For his part, Phenicie cites cases which he says hold that bonuses are in fact wages and are covered by the state statute. One such case is *Gurnik v. Lee*, 587 N.E.2d 706 (Ind.App.1992). In that case, the state appellate court held that a bonus payable to a former president of a travel agency pursuant to an employment contract was a wage under § 22–2–5–1. Plaintiff cites other cases he claims are analogous, including cases in which Indiana courts have held that commissions payable to salespersons are wages for purposes of the statute. However, these cases are distinguishable from the present case, as is best illustrated by the language in the *Gurnik* case itself, wherein the court specifically discussed the holdings in *Wilson* and *Jeurissen*. The court stated that "Indiana law does not exclude a bonus as wages simply because it is denominated as a 'bonus.'" *Gurnik*, 587 N.E.2d at 709. However, the court goes on to explain that a bonus is considered wages only under certain circumstances. In *Gurnik*, for example, the plaintiff's "bonus was compensation in addition to her salary, related to the amount of time she worked (as it was to be paid pro rata if she was not employed at the end of the year), which was paid on a regular, periodic basis." *Id.* Then, the court differentiated those facts from the facts in *Wilson* and *Jeurissen* by writing that "[u]nlike the severance pay in *Wilson*, the bonus was paid on a regular, periodic basis. Also, the minimum bonus was not predicated on the financial success of [the defendant company] as was the bonus considered in *Jeurissen*." *Id.*

In this case, Phenicie's bonus was not tied to, or calculated from, his salary or commissions, which he does not contest were paid to him on a monthly basis. Rather, as defendants argue, the Bonus Plan at issue in this case was based on company performance and not on a branch manager's personal hours or job duties. Phenicie argues, essentially, that the bonus *was* based on his performance, since without his efforts the branch would not have been as profitable and no bonus would have accrued. Again, the defendants have the stronger argument on this issue.

As defendants point out, the 1993 Bonus Plan contained the following relevant language pertaining to managers' bonuses: [3]

## II. INCENTIVE BONUS—FOCUS ON BRANCH PERFORMANCE

— Quantitative Performance
— Branch Operating Income ($)
— Quantitative Allocation Based on
— Branch Performance to Annual Plan
— Branch Size Based on Sales Volume
— Subjective Awards Based on Extraordinary Situations or Performance

. . .

## 1993 INCENTIVE BONUS FOR BRANCH MANAGERS

— Focus on Attaining 1993 Branch Operating Income Goals
— Quantitative Allocation Based on
— Bonus Range by Individual Positions
— Individual Branch Performance
— Subjective Awards to Recognize
— Outstanding Performer(s) in Plan
— Outstanding Effort in Uncontrollable Situation
— 1993 Budget Accrued Bonus Based on Achieving Plan at all Locations

Affidavit of Donald Grau, Exh. 1, pp. 1 & 4. Thus, the incentive bonus at issue was clearly based on the performance of each branch office rather than the performance of each individual branch manager. This also mitigates against plaintiff's argument that his bonus constituted wages, since it was not in some manner linked directly to his annual salary or the hours he worked, as was the case in *Gurnik* and the other cases upon which plaintiff relies.

Plaintiff, in turn, argues that his bonus "is not something extra and is absolutely related to work performed by Phenicie. The sales at the Fort Wayne, Indiana and Lima, Ohio branches are directly related to work performed by Phenicie. Phenicie was directly involved with the sales at the Fort Wayne, Indiana and Lima, Ohio branches and was responsible for ensuring that the branches

---

**3.** For purposes of this summary judgment motion only, defendants accept as true plaintiff's contention that the 1993 Bonus Plan was in effect during fiscal year 1994.

ran at an acceptable profit margin.... If Phenicie did a good job as a branch manager, as would be reflected in his branches' sales, he was entitled to a bonus based upon the Defendants' formula as set forth in the branch managers' bonus plan.... Managing a branch successfully was Phenicie's job; therefore, the sales and profits of the branch must be considered directly linked to work performed by Phenicie." Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 7.

No doubt an effective branch manager would enhance his offices' chances of success. But the fact that Phenicie may have been a very effective manager, and that he was able to motivate the sales representatives whom he supervised (whose own efforts must have certainly contributed to the success of the two branches, as Phenicie makes no claim of having made all the sales himself) is not enough to support an argument that his bonus was "directly linked to work performed by Phenicie." In fact, while the court has no reason to doubt that Phenicie was an effective branch manager, it is theoretically possible that a branch manager who did not work as hard or as long as Phenicie could still have received a large bonus. This could happen, for example, even to an unproductive and inefficient manager, as a result of superior work by his sales representatives, increased orders from purchasers, or even unforeseen market forces which stimulate sales through no effort of the branch manager (sheer "dumb luck"). That branch manager would still receive his bonus under the Plan, despite his inefficient performance, since the bonus is linked to the performance of the branch rather than the performance of the manager himself. And, as defendants point out, the opposite could also be true. Factors out of Phenicie's control could have caused the profits of his branches to fall. In that instance, he would not receive any bonus regardless of how many hours he worked or how efficient he was at his job. Thus, Phenicie's bonus was directly linked to the sales volume of his two branches, rather than to his own personal efforts, despite the fact that his work performance no doubt contributed greatly to that business success. Thus, his bonus can-

not be considered wages for purposes of § 22–2–5–1.

■ Finally, defendants argue that even if the bonus at issue is considered a wage, Phenicie's claim under the wage statute must fail since he did not request periodic payment of that bonus as required by the statute. Plaintiff concedes that the language of the statute specifically requires that employees request bi-weekly or semi-monthly payment of wages before they are entitled to invoke the protection of the statute, a holding this court specifically made in *Wilson*. However, Plaintiff does cite some case law which holds that, under certain circumstances, an employee's failure to request periodic payment of wages does not bar him or her from invoking the protection of the statute. Such circumstances, the courts have held, include where an employee on a public works project was not paid the prevailing wage for such work but was able to recover liquidated damages under the statute for the employer's failure to pay the proper wage. *Stampco Construction Co., Inc. v. Guffey*, 572 N.E.2d 510 (Ind.App.1991). The Indiana Supreme Court held in *Osler Institute, Inc. v. Inglert*, 569 N.E.2d 636 (Ind.1991) that an employee who was terminated from her job could recover under § 22–2–5–2 despite the fact that she did not request payment for overtime and vacation pay prior to her termination. In the present case, however, Phenicie is not alleging that defendants failed to pay him the proper or prevailing salary during his employment, which distinguishes this case from *Stampco*. And in *Osler* the court reasoned that the employee's failure to request her wages under § 22–2–5–1 did not preclude her from recovering under § 22–2–5–2 after her employer failed to pay her "the amount due her on her next and usual payday...." *Osler*, 569 N.E.2d at 637. This factual scenario might apply to the present case if Phenicie was claiming that the defendants had withheld his final monthly salary and commission check, but that he does not allege. Thus, even if one assumes for the sake of argument that Phenicie's bonus was a wage, there is no evidence that he requested periodic payment of that wage as required by § 22–2–5–1 and therefore he is barred from invoking the penalty provisions of § 22–2–5–2.

In any case, this is truly a non-issue. Having determined that Phenicie's bonus was not a wage, it is irrelevant whether or not he requested periodic payment. More fundamentally, as mentioned previously, there would have been no point in Phenicie making such a request, since his bonus pay could not possibly be paid bi-weekly or semi-monthly as set forth in the statute. The bonus could only be calculated at the end of each fiscal year, when the final branch income amounts could be determined.

## CONCLUSION

For the foregoing reasons, the court determines that the bonus sought by Phenicie in this suit does not constitute wages and therefore defendants' Motion for Summary Judgment is GRANTED as to plaintiff's claim under I.C. § 22-2-5-1.